UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GARY L. PRETZER and GAIL PRETZER,

        Plaintiffs,

v.

        Case Number 09-11894-BC
        Honorable Thomas L. Ludington

OTTO BOCK HEALTHCARE LP,
a foreign limited partnership

        Defendant.
_____/

## **ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

On April 8, 2009, Plaintiffs Gary and Gail Pretzer filed a complaint alleging that he was injured while using a continuous passive motion chair ("CPM Chair") as part of a home rehabilitation program following rotator cuff surgery.[1] He alleged that the arm of the CPM Chair, with his arm still strapped to it, detached and fell forward toward the ground. Another portion of the chair, he explains, hit his shoulder as the arm of the CPM chair fell. Plaintiff's complaint alleges causes of action for negligence, breach of implied warranty of merchantability, and failure to warn against Defendant Otto Bock Healthcare, LP ("Defendant"), who leased the CPM Chair to him and delivered it to Plaintiff's home.[2] Plaintiff filed his complaint in Saginaw County Circuit Court, but Defendant removed the case to this Court on May 18, 2009.

Now before the Court is Defendant's motion for summary judgment [Dkt. # 11] pursuant to

---

[1] Gail Pretzer's only claim is for loss of consortium, a derivative of her husband's claims. "Plaintiff" will therefore refer only to Gary Pretzer.

[2] Plaintiff's complaint could be construed as also alleging a number of exclusively product liability claims, such as design defect, and Defendant devotes a significant portion of its brief to this point. However, Plaintiff asserts he is bringing no such product liability claims, thus the Court will not discuss whether the CPM Chair was defective under Michigan product liability law.

Federal Rule of Civil Procedure 56, filed November 6, 2009. Plaintiff filed a response [Dkt. # 14] on February 2, 2010. Defendant filed a reply on February 3, 2010. [Dkt. # 16]. On February 8, 2010, the Court held a hearing on Defendant's motion.

Defendant asserts that Michigan's product liability statute is a plaintiff's only means of redress where a product allegedly causes injury, and as a result, it is entitled to summary judgment because Plaintiff cannot prove the CPM Chair was defective and that Defendant knew or should have known about the defect. *See* Mich. Comp. Laws § 600.2947(6). Defendant also contends that Plaintiff cannot prove causation because the accident could not have occurred as Plaintiff alleges and Plaintiff's sole expert can only speculate about causation. In response, Plaintiff asserts that his cause of action is not stated as a products liability claim. He contends, simply, that Defendant did not use reasonable care when delivering, installing or setting-up, and repairing the CPM Chair in the performance of the lease agreement where the arm actuator unit of the CPM Chair was attached to the chair frame by only one of the two standard hand-twist bolts. Plaintiff also contends that whether and how the accident occurred are fact issues which preclude summary judgment.

The parties have not extensively addressed the issue of whether Michigan product liability law applies where a plaintiff alleges that the defendant did not use reasonable care in delivering, installing or setting-up, and repairing a product. However, Defendant is not a seller, but a lessor. Moreover, a significant aspect of Defendant's relationship with Plaintiff was based on service, not the sale of a product. Consequently, the Michigan product liability statute will not prevent Plaintiff from recovering in a negligence action against Defendant.

Beyond its contentions about the applicability of Michigan product liability law, Defendant's only substantive argument is that Plaintiff cannot establish causation. As discussed below, Plaintiff

has raised a genuine issue of material fact regarding causation and demonstrated an ability to establish a prima facie case. The Court recognizes that the party bringing a summary judgment motion has the initial burden of informing the court of the basis for its motion and identifying portions of the record which demonstrate the absence of dispute over material facts. *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.,* 276 F.3d 845, 848 (6th Cir. 2002). As Defendant has not met its burden, the Court will deny Defendant's motion for summary judgment.

I

On February 21, 2007, Plaintiff underwent surgery to repair his left rotator cuff. His orthopedic surgeon, Anthony deBari, M.D. ("Dr. deBari"), prescribed the CPM Chair for Plaintiff's use at his home to rehabilitate the left shoulder. Tiffany Kliza ("Kliza"), a patient service representative for Defendant, delivered the CPM Chair on February 20, 2007, pursuant to Dr. deBari's request. Kliza required Plaintiff to sit in the chair while she demonstrated how to operate the CPM Chair. Pl. Dep. Tr. 72:25-73:1; [Dkt. # 11-7].

Also on February 20, 2007, both Plaintiff and Kliza signed a Patient Agreement ("Agreement"), which detailed the necessary controller settings for the chair, as well as frequency of use, among other things. Patient Agreement; [Dkt. # 4]. The Agreement indicates that Plaintiff understood, inter alia, the operation of the device, the settings, when to contact a physician, and safety concerns. The Agreement also indicates that Kliza verified Plaintiff's demonstrated competency in using the device and that the device was securely placed in the home.

The CPM Chair did not function properly and within a few days of Plaintiff's surgery, Kliza returned to Plaintiff's home to check on the machinery. Plaintiff believed Kliza put a new arm on the chair. *Id.* at 76-77. Although she could not recall whether she replaced the controllers, the arm

actuator unit, or the whole CPM Chair, Kliza acknowledged that she altered the chair in some manner when she returned to Plaintiff's home on February 27, 2007, to check on the CPM Chair. Kliza Dep. Tr. 29:25-30:5, 32:8-21; [Dkt. # 11-9]. The CPM Chair functioned properly after Kliza's visit and Plaintiff continued to use it for one to two hours each day for approximately two weeks. Pl. Dep. Tr. 78. At his deposition, Plaintiff affirmed that he did not do anything to the arm of the CPM Chair. *Id.* at 80.

Plaintiff was using the CPM Chair on or about March 11, 2007, when the incident giving rise to this action occurred. Plaintiff testified that as he began to remove the final of the three velcro straps that bound his left arm to the arm actuator unit portion of the chair, the arm actuator detached from the chair frame and fell forward. *Id.* at 80-85. Plaintiff testified that because his arm was still strapped to the arm actuator, his arm fell forward, and his body was pulled down with the actuator. *Id.* at 85. He also testified that some portion of the CPM Chair struck him in the left shoulder. *Id.* at 85-88. Because she was in another part of the residence, Plaintiff's wife did not witness the accident; but she immediately went to check on him after she heard Plaintiff exclaim "Oh my God!" Gail Pretzer Dep. Tr. 37; [Dkt. # 11-8]. She found Plaintiff slumped over, partially off the CPM Chair. *Id*. Plaintiff testified that his shoulder began swelling immediately and there was an indentation in the skin of his shoulder for a month or two.

Kliza picked up the CPM Chair on March 13, 2007. She drafted an incident report, logging Plaintiff's description of the incident. Kliza Dep. Tr. 33, 38; [Dkt. # 11-9]. While Kliza did not make any determination as to how the incident occurred, she did record in an incident report that to prevent the incident, "[she] could have checked the entire machine to make sure nothing was loose or broken." *Id.* at 39.

Kelly Sulkey ("Sulkey"), Regional Operations Manager for Defendant, determined that the CPM Chair was missing one of the two standard hand-twist bolts and that the bolt holes themselves did not have inside threads. Sulkey Dep. Tr. 6, 25; [Dkt. # 11-10]. Sulkey testified that even if a bolt problem were to arise, there was no way for the incident to have occurred as Plaintiff described, because a metal piece on the CPM Chair prevents the arm actuator unit from falling in any direction but to the side. *Id.* at 40-41. She also testified that there was no other part of the chair that would have struck Plaintiff even if the arm actuator unit fell as described. *Id.* at 42-43.

Plaintiff alleges he "sustained a new, additional tear injury to his left rotator cuff and/or an aggravation of his prior rotator cuff injury in his left shoulder" as a result of the CPM Chair accident. Def. Br. Ex. A, Compl. ¶ 17; [Dkt. # 11-A]. At his deposition, Plaintiff testified that he "cannot" have surgery to repair the damage because he believes that his health insurance provider, Health Plus, is unwilling to reimburse him for another surgery under these circumstances and he does not have the means to afford the medical bills if his health insurance is unwilling to pay. Pl. Dep. Tr. 96-97.

Although patient records indicate that within days of the incident, Plaintiff's shoulder was red and swollen, Dr. deBari initially opined that he did not believe Plaintiff had done any substantial damage to the repair. Def. Br. Ex. G; [Dkt. # 11-12]. Dr. deBari now believes Plaintiff requires a second surgery. Def. Br. Ex. J; [Dkt. # 11-15]. However, Dr. deBari has noted that since reporting that the "CPM unit came crashing down on the top portion of [Plaintiff's] left shoulder," Plaintiff has persistently reported experiencing considerable left shoulder pain "that had not gotten better." Def. Br. Ex. J at 1; [Dkt. # 11-15]. A January 7, 2008, MRI revealed a new tear in Plaintiff's rotator cuff. Dr. deBari Aff. ¶ 9; [Dkt. # 14-C]. Dr. deBari has consistently indicated that the new tear is

most likely related to the CPM Chair failing. Def. Br. Ex. G; [Dkt. # 11-12]; Dr. deBari Aff. ¶ 10; [Dkt. # 14-C].

II

Under Federal Rule of Civil Procedure 56(c), a court must review "pleadings, the discovery and disclosure materials on file, and any affidavits." The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). "No genuine issue of material fact exists when the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Mich. Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002) (internal quotations omitted).

The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Pers. Care Home, Inc.*, 276 F.3d at 848. The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). This affirmative showing must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The party who bears the burden of proof must present a jury question as to each element of the claim, *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000), rather than raise only "metaphysical doubt as to the material facts." *Highland Capital, Inc. v.*

*Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991).

III

As a preliminary matter, Defendant's Reply Brief contends the Plaintiff's response should be stricken as untimely. [Dkt. # 16]. The response was filed almost a full three months after Defendant filed the present motion for summary judgment, well beyond the twenty-one day deadline set forth in Local Rule 7.1(d)(1)(B) and the Court's Scheduling Order [Dkt. # 8].[3] Plaintiff did not seek to extend the time to file the response. Defendant's Reply Brief and oral argument specifically argued that Dr. deBari's supporting affidavit was new evidence that is inconsistent with his previously disclosed expert report. As will be addressed herein, the affidavit serves only to clarify the previous report and the relevant language in both documents is the same: Dr. deBari states that the tear is "most likely related to the CPM device failing." Therefore, the response will remain a part of the record because it does not advance substantially new evidence and striking the response would not change the result of the motion.

Plaintiff's complaint appears to advance multiple claims, including negligence and products liability claims like breach of implied warranty of merchantability and design defect. Def. Br. Ex.

---

[3]At oral argument, Plaintiff's counsel stated that he believed Michigan State Court Rules applied, requiring him only to ensure that the response was filed and served 7 days before the scheduled hearing. While Plaintiff's counsel properly cites Michigan Court Rule 2.116(G)(1)(a)(ii), he is advised to review federal court rules for future practice in federal court.

A, Complaint ¶ 15; [Dkt. # 11-A].[4] Defendant contends that Michigan product liability law is Plaintiff's only avenue of redress because this incident involves a product, but Plaintiff asserts that his only claim is one for ordinary negligence that does not depend on any defect under product liability law. Pl. Resp. 9, 10; [Dkt. # 14]. That is, Plaintiff is not suing Defendant because it sold a defective product, but instead because it did not use reasonable care in leasing the CPM Chair to him at the inspection, delivery, set-up, or repair stage.

Defendant asserts that as a nonmanufacturing seller, its liability under Michigan Compiled Laws § 600.2947(6) is extremely limited, such that if Plaintiff's claim fell within Mich. Comp. Laws § 600.2947(6), Plaintiff must satisfy one of the following to hold Defendant liable:

> (a) The seller failed to exercise reasonable care, including breach of any implied warranty, with respect to the product and that failure was a proximate cause of the person's injuries.
> (b) The seller made an express warranty as to the product, the product failed to conform to the warranty, and the failure to conform to the warranty was a proximate cause of the person's harm.

Pursuant to Michigan Compiled Laws § 600.2945(h), a product liability action "means an action based on a legal or equitable theory brought . . . for injury to a person . . caused by or

---

[4] Plaintiff's complaint states that Defendant had a duty to:
    (a)    Provide a shoulder CPM chair that was reasonably safe and fit for its intended purpose;
    (b)    safely and carefully deliver and properly set up the shoulder CPM chair provided for the customer's use;
    (c)    warn the user of any latent or hidden dangers associated with the use of a should [sic] CPM chair it provided;
    (d)    attach the two motor arm actuator unit to the CPM chair frame with two or more hand-twist bolts through closed-sided holes in the attachment bracket, in order to insure that the arm actuator unit of the CPM chair could not and would not detach, separate and fall from the chair frame while being used, as a result of foreseeable movement and vibration occurring during use;
    (e)    otherwise provide only shoulder CPM chairs designed, set up, assembled, and deployed so as to not cause injury to user.
Def. Br. Ex. A, ¶ 15.

resulting from the production of a product." The term "product" includes "any and all component parts of a product." Mich. Comp. Laws § 600.2945(g). Production means the manufacture, design, assembly, inspection, warning, and instructing of a product. Mich. Comp. Laws § 600.2945(i). Plaintiff has alleged that a CPM Chair and its component, the arm actuator unit, caused a tear in his rotator cuff because Defendant negligently inspected, installed in his home, and repaired the Chair. Thus the statute, as an initial matter, appears to encompass Plaintiff's claim, even though Plaintiff labels it negligence, because failure to use reasonable care to inspect, install, or repair a product is a legal theory of liability brought for damage to person as under Michigan Compiled Laws § 600.2945(h),(i).

As a further threshold matter, however, whether Mich. Comp. Laws § 600.2947 governs also depends on the defendant's status; if a defendant is neither a manufacturer, nor a nonmanufacturing seller, Michigan's product liability statute cannot apply. Defendant asserts, without citing authority, that it qualifies as a "nonmanufacturing seller" under Mich. Comp. Laws § 600.2947(6). However, Plaintiff did not purchase the CPM Chair from Defendant; it was temporarily supplied to him under a rental agreement, for post-operative therapy pursuant to Dr. deBari's prescription. The Patient Agreement consistently used the terms "rent," "rental," and "service plan." The Agreement also clearly indicates that Defendant was doing more than simply delivering a product to Plaintiff's home. Defendant delivered, installed, set-up, instructed Plaintiff on the proper operation of, and repaired specialized medical equipment for Plaintiff's temporary use in rehabilitative therapy. Defendant has advanced no evidence to rebut what appears to be its status as a temporary supplier of medical equipment, to whom the equipment is returned when no longer required by doctor's orders or recommendations.

Moreover, Michigan courts have long recognized at common law that each person engaged in performing any service or undertaking is obligated to use due care "so as not to unreasonably endanger the person or property of others." *Clark v. Dalman*, 150 N.W.2d 755 (1967). As recently as October, 2009, *Heaton v. Benton Const. Co.*, No. 06-003972, 2009 WL 3455391 (Mich. Ct. App. Oct. 27, 2009), the Michigan Court of Appeals reasoned that where a claim involving a product is based on *Clark*, the claim is broader than a simple product liability claim. Plaintiff therefore can bring a negligence action notwithstanding the statute.

Although Defendant has not specifically challenged a negligence claim, because Defendant asserts Plaintiff has a fundamental inability to establish causation, discussion of Plaintiff's negligence claim is warranted at this juncture. To establish a prima facie case of negligence, a plaintiff must demonstrate: (1) that the defendant owed him a duty of care, (2) that the defendant breached that duty, (3) that the plaintiff was injured, and (4) that the defendant's breach caused the plaintiff's injuries. *See Henry v. Dow Chem. Co.*, 701 N.W. 2d 684 (Mich. 2005). It is undisputed that Plaintiff continues to suffer from a rotator cuff tear, is unemployed, and requires a second surgery; thus the injury element of his negligence claim is met for purposes of review of Defendant's motion for summary judgment.

A

The threshold inquiry in negligence actions is whether a defendant owed the plaintiff a duty. *Brown v. Brown*, 739 N.W.2d 313 (2007). Whether a duty exists is a question of law for the court and it is determined by considering whether the relationship between the parties imposes upon the defendant a legal obligation for the benefit of the plaintiff. *Moning v. Alfono*, 254 N.W.2d 759 (Mich. 1977).

It is undisputed that Defendant's service representative, Kliza, delivered and installed the CPM Chair at Plaintiff's home and instructed Plaintiff on proper use of the unit. It is also undisputed that Kliza returned on February 27, 2007, to repair the malfunctioning CPM Chair. Thus, Defendant incurred an obligation to use due care when performing the services of delivering, installing, and repairing the CPM Chair, as well as instructing Plaintiff on the unit's use and operation. *See Clark*, 150 N.W.2d 755.

B

Plaintiff must also establish that Defendant breached its duty of due care. When read in the light most favorable to the Plaintiff, his allegations are that Defendant negligently delivered, installed, or repaired the CPM Chair, because the chair that he utilized for post-operative therapy in his home was missing a standard hand-twist bolt to keep the arm actuator unit attached to the chair frame.

During Sulkey's deposition, she stated that although there was only one bolt attaching the arm bracket to the CPM Chair frame that Plaintiff was using, two are typically required. She then expounded on this requirement:

> Q. Where does that standard or requirement come from?
> A. In the training.
> Q. Is that something that a service representative would be made aware of, that there should be two attachment bolts between the arm bracket and the chair frame?
> A. Yes.
> Q. And is that something that the service representative would be responsible for looking at, checking or knowing about when they make the delivery of the unit?
> A. Yes

Sulkey Tr. 26-27, Oct. 2, 2009.

The evidence advanced by the parties supports the conclusion that a genuine issue of material fact exists as to whether Defendant breached its duty of due care to Plaintiff. Plaintiff testified that Defendant delivered, installed, instructed, and returned to inspect and repair the CPM Chair. Both Sulkey and Kliza acknowledged that one of the standard attachment bolts was missing. Sulkey's testimony demonstrates that service representatives like Kliza are responsible for inspecting the chairs before delivery and are aware that the chair frame should be attached to the arm actuator unit with two bolts. Kliza herself determined, in writing, that she "could have checked the entire machine to make sure nothing was loose or broken." One logical inference that could be drawn from these facts is that Defendant either delivered and installed a CPM Chair without a standard attachment bolt, or inspected and repaired the CPM Chair without noticing that one was missing. The facts thus demonstrate that a genuine issue of material fact exists as to whether the Defendant, through its service representative Kliza, breached a duty of due care where the CPM Chair that Defendant delivered, installed and repaired in Plaintiff's home was missing a standard attachment bolt.

C

To establish causation, Michigan law requires proof of both cause in fact and proximate cause. *Case v. Consumers Power Co.*, 615 N.W.2d 17 (Mich. 2000). Defendant challenges Plaintiff's proofs on cause in fact. "[A]t a minimum, a causation theory must have some basis in established fact." *Skinner v. Square D Co.*, 516 N.W.2d 475, 480 (1994). To establish cause in fact, a plaintiff must "present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Id.* "A prima facie case may be established by use of legitimate inferences as long as sufficient evidence is

introduced to take the inferences out of the realm of conjecture." *Berryman v. Kmart Corp.*, 483 N.W.2d 642, 645 (Mich. Ct. App. 1992) (internal citations omitted). As will be explained below, Defendant is not entitled to summary judgment on the causation element of Plaintiff's negligence claim.

1

Defendant first contends that Plaintiff's evidence of causation, if any, is speculative. To support this contention, however, Defendant cites authorities that involve fatal injuries allegedly resulting from a defective product, where no one was available to relate what transpired or preceded the injury. In *Skinner*, for example, plaintiff's decedent was electrocuted while operating homemade tumbling machine on which he had installed the manufacturer's switch. In *Howe v. Michigan Central Railroad Co.*, 211 N.W. 111 (Mich. 1926), plaintiff's decedent fell from a bridge while working as a rear brakeman on a freight train. Finally, Defendant cites *Karbel v. Muer*, 635 N.W.2d 69 (Mich. Ct. App. 2001), which involved a forty-foot sailboat that, along with all its occupants, was lost at sea. As there were no witnesses to the fatal incidents in each of these cases, the courts deemed all of the plaintiffs' theories mere conjecture and equal in probability and, thus, insufficient to survive summary judgment, even when backed by extensive technical data and expert opinions.

Here, however, Plaintiff has advanced his own recollection of the events leading up to and during the accident, under oath. That is, Plaintiff's evidence is his own testimony. Assessing the weight to give such evidence is a task for the jury, not the court on motion for summary judgment. *Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . . The

evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.") (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

Defendant also argues that Plaintiff's expert on causation has advanced no more than speculation and thus Plaintiff cannot meet the causation standard. Plaintiff's discovery responses demonstrate that he is relying solely on Dr. deBari as an expert witness in this case. Def. Br. Ex. K 1; [Dkt. # 11-16]. Dr. deBari's letter does not, as Defendant so boldly claims, "opine that ***nobody*** would be able to determine whether [Plaintiff's] recurrent tear was caused by injury or nonhealing." Def. Br. at 15; [Dkt. # 11] (emphasis in original). Dr. deBari's findings on the possible cause of this recurrent rotator cuff tear are as follows:

> This is the first time that I have had any experience with a CPM unit malfunction. It is possible that the new tear could have occurred with an injury to the left shoulder such as the patient describes. There is also a possibility that this represents nonhealing of the previous repair. It would be difficult for me to clearly differentiate between the two mechanisms causing his recurrent tear. *If indeed this injury did occur, it would be most likely related to the CPM device failing.*

Def. Br. Ex. G (emphasis added); [Dkt. # 11-12]; Def. Reply 4; [Dkt. #16]. Dr. deBari has concluded similarly in his recent affidavit, furnished with Plaintiff's response:

> While it is possible that this new rotator cuff tear could have resulted from non-healing of the previous tear, upon further review of this file, and on the basis of the history provided and my clinical findings, it is my opinion that it is more likely that this new tear resulted from trauma. Since there is no history of any other injury to Mr. Pretzer's left shoulder from the date of the surgery to the date of the repeat MRI, it is my opinion that *the new rotator cuff tear in Mr. Pretzer's left shoulder is most likely related to the CPM device failing*.

Dr. deBari Aff. ¶ 10; [Dkt. # 14-C] (emphasis added).

The factual basis of Dr. deBari's opinion is his medical judgment and Plaintiff's account of the incident. Mere "weaknesses in the factual basis of an expert witness' opinion . . . bear on the weight of the evidence rather than on its admissibility." *United States v. L.E. Cooke Co.*, 991 F.2d

336, 342 (6th Cir. 1993). That is, as the credibility of Plaintiff's testimony rises and falls, so too does Dr. deBari's corroboration of the events giving rise to the injury. For those reasons, summary judgment, on the grounds that Plaintiff's evidence is speculative, would be inappropriate.

2

Finally, Defendant asserts that Sulkey's testimony is dispositive on the matter of causation because she is very familiar with the CPM Chairs and has testified to and demonstrated the impossibility of such an accident occurring at all, let alone in the manner Plaintiff describes. Defendant labels Sulkey's testimony "unrebutted evidence."

However, Sulkey admittedly was not present when the accident occurred. Nor did she testify as to the potential effect on the arm actuator unit if it became detached from the chair frame while Plaintiff's arm was still strapped onto it. Moreover, Sulkey also testified that:

> [J]ust from what [Plaintiff] had stated [about] the arm falling off, the obvious thing that you would realize is that there must not have been both screws in that needed to be and that's the first place I looked.

Sulkey Dep. Tr. 25:20-24. A logical inference from this testimony, viewing it in the light most favorable to Plaintiff, is that the chair and arm unit not only *could* have separated, but Sulkey understood precisely how and why it would fall.

Plaintiff has offered more than conjecture: he has testified about his first-hand experience during the event, as well as his observation that a bolt was missing and that there were no inside threads to keep the hand twist bolts in place. This contradiction between Plaintiff's testimony and Sulkey's testimony and demonstration constitutes a genuine issue of material fact. Such a determination is yet another credibility assessment that the court must not engage in on motion for summary judgment. *Anderson*, 477 U.S. at 255.

IV

Accordingly, it is **ORDERED** that Defendant's motion for summary judgment [Dkt. # 11] is **DENIED**.

                                              s/Thomas L. Ludington
                                              THOMAS L. LUDINGTON
                                              United States District Judge

Dated: February 24, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 24, 2010.

                                      s/Tracy A. Jacobs
                                      TRACY A. JACOBS