UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GARY L. PRETZER and GAIL PRETZER,

        Plaintiffs,

v.

        Case Number 09-11894-BC
        Honorable Thomas L. Ludington

OTTO BOCK HEALTHCARE LP,

        Defendant.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS IN LIMINE AND STRIKING DEFENDANT'S SUPPLEMENTAL BRIEF**

On April 8, 2009, Plaintiffs Gary and Gail Pretzer ("Plaintiffs") filed a complaint alleging that Gary Pretzer was injured while using a continuous passive motion chair ("CPM Chair") as part of a home rehabilitation program following rotator cuff surgery. Plaintiffs alleged that the arm of the CPM Chair, with Gary Pretzer's arm still strapped to it, detached and fell forward toward the ground. Another portion of the chair, Plaintiffs contend, hit his shoulder as the arm of the CPM chair fell. Plaintiffs' complaint alleges causes of action for negligence and loss of consortium against Defendant Otto Bock Healthcare, LP ("Defendant"). Defendant leased the CPM Chair to Plaintiffs, delivered it to their home, set it up, and instructed Gary Pretzer on its use. Plaintiffs filed their complaint in Saginaw County Circuit Court. Defendant removed the case to this Court on May 18, 2009 on the basis of diversity jurisdiction.

On November 6, 2009, Defendant filed a motion for summary judgment contending that Plaintiffs' complaint should be dismissed because there is insufficient evidence of causation to reach the jury and that the alleged chair failure could not have occurred as Plaintiffs described. [Dkt. # 11]. On February 24, 2010, the Court issued an order denying Defendant's motion, and concluding

that material issues of fact necessitated a trial. The scheduling order was extended to permit the parties additional time to conduct case evaluation pursuant to Michigan Court Rule 2.403. Case evaluation was unsuccessful and a jury trial is scheduled to begin on September 14, 2010 at 8:30 a.m.

Defendant filed three motions in limine on April 14, 2010. In the first motion, Defendant seeks to exclude Plaintiffs' expert from testifying as to the cause of the alleged injury. In the second motion, Defendant seeks to exclude testimony and evidence of medical expenses. In the third motion, Defendant seeks to exclude testimony concerning lost wages resulting from the alleged injury. Plaintiffs filed separate responses to the motions on May 12, 2010,[1] and Defendant filed replies on May 19, 2010. Defendant also filed a "supplemental brief" on August 27, 2010 in support of its motion to exclude Plaintiff's expert from testifying as to the cause of the injury.

A pretrial conference was held on August 30, 2010 at 3:00 p.m. The motion hearing scheduled for that time was canceled because the parties papers provide the necessary information to address the motions in limine.

**I**

On February 21, 2007, Plaintiff Gary Pretzer underwent surgery to repair his left rotator cuff. His orthopedic surgeon, Anthony deBari, M.D. ("Dr. deBari"), prescribed the CPM Chair to aid in rehabilitation of the shoulder. Tiffany Kliza ("Kliza"), a patient service representative for Defendant, delivered the CPM Chair on February 20, 2007, pursuant to Dr. deBari's request. Kliza

---

[1] As Defendant emphasizes in its reply brief, the responses were filed approximately one-week late. However, given the length of time between resolution of the summary judgment motion in February and the trial date in September, Defendant was not prejudiced by the late filing.

-2-

required Gary Pretzer to sit in the chair while she demonstrated how to operate the CPM Chair. Pl. Dep. Tr. 72:25-73:1; [Dkt. # 11-7].

The CPM Chair did not function properly and within a few days of the surgery, Kliza returned to Plaintiffs' home to repair the chair. Gary Pretzer believed Kliza put a new arm on the chair. *Id.* at 76-77. Although she could not recall whether she replaced the controllers, the arm actuator unit, or the whole CPM Chair, Kliza acknowledged that she altered the chair in some manner when she returned to Plaintiffs' home on February 27, 2007. Kliza Dep. Tr. 29:25-30:5, 32:8-21; [Dkt. # 11-9]. The CPM Chair functioned properly after Kliza's visit and Gary Pretzer continued to use it for one to two hours each day for approximately two weeks. Pl. Dep. Tr. 78.

Gary Pretzer alleges his shoulder was reinjured on March 11, 2007 while using the chair. He testified that as he began to remove the final velcro strap that bound his left arm to the arm actuator unit portion of the chair, the arm actuator detached from the chair frame and fell forward. *Id.* at 80-85. Gary Pretzer testified that because his arm was still strapped to the arm actuator, his arm fell forward, and his body was pulled down with the actuator. *Id.* at 85. He also testified that some portion of the CPM Chair struck him in the left shoulder. *Id.* at 85-88. Gail Pretzer did not witness the accident, but she immediately went to check on Gary Pretzer after she heard her husband exclaim "Oh my God!" Gail Pretzer Dep. Tr. 37; [Dkt. # 11-8]. She found Gary Pretzer slumped over, partially off the CPM Chair. *Id.* Gary Pretzer testified that his shoulder began swelling immediately and there was an indentation in the skin of his shoulder for a month or two.

Plaintiffs allege that Gary Pretzer "sustained a new, additional tear injury to his left rotator cuff and/or an aggravation of his prior rotator cuff injury in his left shoulder" as a result of the CPM Chair accident. Def. Br. Ex. A, Compl. ¶ 17; [Dkt. # 11-A]. Dr. deBari recommended that Plaintiff

schedule a second surgery to repair the tear. Pl.'s Dep. at 95–97. Plaintiff, however, is reluctant to do so because he is concerned that his health insurance provider will not pay for the surgery. *Id.* He testified that he called a general information telephone line provided by the insurer, and was informed that "because this was like an accident, my health insurance doesn't necessarily have to pay for another surgery." *Id.* at 96.

Although patient records indicate that within days of the incident, Gary Pretzer's shoulder was red and swollen, Dr. deBari initially concluded that he did not believe the shoulder was damaged in the incident. Def. Br. Ex. G; [Dkt. # 11-12]. Dr. deBari now believes Gary Pretzer needs a second surgery. Def. Br. Ex. J; [Dkt. # 11-15]. Dr. deBari notes that since reporting that the "CPM unit came crashing down on the top portion of [his] left shoulder," Gary Pretzer has persistently reported considerable left shoulder pain. Def. Br. Ex. J at 1; [Dkt. # 11-15]. A January 7, 2008, MRI revealed a new tear in Gary Pretzer's rotator cuff. Dr. deBari Aff. ¶ 9; [Dkt. # 14-C]. Dr. deBari stated in an affidavit that the new tear is "most likely related" to the injury sustained when the CPM Chair failed. Def. Br. Ex. G; [Dkt. # 11-12]; Dr. deBari Aff. ¶ 10; [Dkt. # 14-C].

**II**

Defendant contends that Plaintiffs' proposed expert witness, Dr. deBari, should be precluded from testifying as to the cause of Gary Pretzer's injury because Dr. deBari is not an expert in "biomechanics" and that his testimony concerning the cause of the injury is "speculation." While Defendant admits that Dr. deBari is qualified to testify about the injury and Gary Pretzer's medical history and treatment, Defendant asserts that his causation testimony would not meet the relevance and reliability requirements set forth in Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 575 (1993). Alternatively, Defendant contends that the Court

should hold an evidentiary hearing to test the relevance and reliability of Dr. deBari's proposed testimony concerning causation before trial.

Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the U.S. Supreme Court explained that trial judges "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 589. The Court enumerated four nonexclusive factors for lower courts to employ in evaluating the admissibility of scientific evidence. Those factors include (1) whether the expert's "theory or technique . . . can be (and has been) tested"; (2) "whether the theory or technique has been subjected to peer review and publication"; (3) the theory or technique's "known or potential rate of error"; and (4) the "general acceptance" of the theory or technique by the "relevant scientific community." *Id.* at 593–94.

Determination of the initial qualifications of an expert to provide testimony is within the discretion of the district court. *Mannino v. Int'l Mfg. Co.*, 650 F.2d 846, 849 (6th Cir. 1981). "[T]he law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determinations." *Kumho Tire*, 526 U.S. at 142 (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997)).

In this case, the key issue is not whether Dr. deBari is qualified to testify as an expert—as

an experienced and respected medical doctor, he is certainly qualified to testify concerning Gary Pretzer's medical injury and treatment. Rather, the key issue is whether Dr. deBari's proposed testimony regarding causation extends beyond his area of expertise. As in all disputes concerning the admissibility of expert testimony, the inquiry is fact specific and requires detailed consideration of exactly what the witness proposes to tell the jury. Here, he proposes to testify that:

> While it is possible that this new rotator cuff tear could have resulted from non-healing of the previous tear, upon further review of this file, and on the basis of the history provided and my clinical findings, it is my opinion that it is more likely that this new tear resulted from trauma. Since there is no history of any other injury to Mr. Pretzer's left shoulder from the date of the surgery to the date of the repeat MRI, it is my opinion that the new rotator cuff tear in Mr. Pretzer's left should is most likely related to the CPM device failing.[2]

deBari Aff. ¶ 10; [Dkt. # 19-A].

Most of Dr. deBari's testimony concerning the cause of the injury is admissible. Gary Pretzer's explanation of the incident may be considered as physicians reasonably rely on their patients' self reports of their injuries for the purpose of making diagnoses. Fed. R. Evid. 703. Dr. deBari is qualified to testify that his patient's injury—the second rotator cuff tear—was more likely than not caused by trauma rather than ineffective repair or slow healing of the first tear. It is an opinion that requires scientific knowledge and experience that most lay observers lack, and it is based on sufficient facts and data to make it reliable. *See* Fed. R. Evid. 702. Dr. deBari formed his opinion based on Gary Pretzer's medical history, his report of the injury, and Dr. deBari's clinical

---

[2] Dr. deBari's proposed testimony is excerpted from an affidavit included in the record. Defendant also filed Dr. deBari's entire deposition transcript along with a supplemental brief [Dkt. # 35] three days before the hearing scheduled on the motion. The Eastern District of Michigan Local Rules prohibit filing deposition transcripts and make no allowance for "supplemental briefs" beyond the motion brief, the response, and the reply. E.D. Mich. L.R. 7.1(e), 26.2. Accordingly, the supplemental brief and transcript will be stricken.

findings, including several physical examinations and an MRI. There is no reason to exclude the testimony based on the reliability of Dr. deBari's methods or questions about whether he applied those methods reliably in this case. *See id.*

Defendant emphasizes that Dr. deBari changed his mind about the cause of the injury several months after in occurred. Initially, Dr. deBari did not believe the alleged CPM Chair failure caused a significant injury or interrupted the rehabilitations process. It was only later, when Gary Pretzer's rehabilitation stalled, that Dr. deBari began to blame the CPM Chair. Defendant further asserts that Dr. deBari's causation testimony is self serving because the other potential cause—non-healing of the initial surgically repaired tear—would reflect poorly on Dr. deBari's performance in surgically repairing that tear.

Those issues, including the role of Gary Pretzer's self-report of the injury in forming Dr. deBari's conclusion, are relevant to Dr. deBari's credibility, but they do not raise reliability concerns that would justify excluding Dr. deBari's testimony in its entirety. Defendant is entitled to cross examine Dr. deBari and attempt to impeach his credibility. It will ultimately be up to the jury to determine how much weight to assign to Dr. deBari's opinion that the second tear was caused by trauma and not by his poor performance of the initial surgery.

To the extent Dr. deBari directly implicates the CPM Chair, however, his testimony must be more limited. As Defendant emphasizes, Dr. deBari is not qualified to offer any opinion about the CPM Chair itself, much less an opinion concerning whether and why the CPM Chair failed. Dr. deBari never examined or tested the chair. Indeed, his only information about the chair is the information he received from his patient. Dr. deBari may not simply repeat his patient's report of the incident or substitute his evaluation of Plaintiff's credibility for the jury's.

In summary, Dr. deBari's may testify concerning his medical evaluation and diagnosis of Plaintiff's injuries. He may testify that the cause of the injury is "most likely" trauma as opposed to residual effects of the surgically repaired tear. He may testify that the CPM Chair malfunction described by Plaintiff is consistent with Plaintiff's injury, and may have been the cause of the injury. He may not, however, testify to facts beyond his personal knowledge or opinions outside his area of medical expertise. He may not testify that because the alleged CPM Chair malfunction was the only "injury" suffered by Gary Pretzer, the malfunction must have caused the second tear. Such testimony would require an inference that any lay person can draw. It would substitute Dr. deBari's evaluation of the evidence for that of the jury. Accordingly, Defendant's first motion in limine [Dkt. # 19] will be granted in part and denied in part.

### III

Defendant contends in its second motion in limine that Plaintiffs should be precluded from introducing evidence regarding future medical expenses because the alleged expenses are speculative and not supported by admissible evidence. *See* Fed. R. Civ. P. 26(a)(1)(A)(iii) (requiring disclosure of "a computation of each category of damages" sought by the plaintiff along with "documents or other evidentiary material . . . on which each computation is based"); *Rodgers v. Fisher Body Div., Gen. Motors*, 739 F.2d 1102, 1107 (6th Cir. 1984) ("Although juries are thus accorded great discretion in determining the amount of damage awards, damages must be proved; they must not be speculative."); *Drayton v. Jiffee Chem. Corp.*, 591 F.2d 252, 362 (6th Cir. 1978) (noting that plaintiffs are only entitled to damages "based upon proof establishing those injuries and compensations with reasonable certainty").

Plaintiffs contend that they are entitled to $13,500 in future medical expenses, which is

apparently the cost of undergoing a second rotator cuff surgery as well as the rehabilitation expenses associated with such a surgery. Defendant contends that Plaintiffs' evidence of the need for a second surgery as well as the evidence of the cost of the surgery is too speculative and should not be presented to the jury. Defendant further contends that Plaintiffs will necessarily rely on hearsay to prove the cost of the additional operation because Plaintiffs have not provided any documentation or testimony from a medical professional concerning the operation's cost. Plaintiff contends that he can testify personally concerning the cost of the first operation, which will provide the jury with the necessary evidence of the cost of the second operation.

At the final pretrial conference, the Court suggested that Plaintiff's testimony as to the cost of the first operation is likely to create hearsay problems. Moreover, the cost of the first operation is minimal evidence as to the cost of the second operation because of the difference in the circumstances, including the extent of the damage. However, if Plaintiff can supplement his proofs concerning the cost of a second operation, he may still request medical expenses. The Court granted Plaintiff permission to supplement Dr. deBari's deposition and solicit testimony as to the projected cost of the second operation. Accordingly, Defendant's second motion in limine [Dkt. # 20] will be denied.

## IV

Defendant also filed a motion in limine to exclude wage-loss damages, which the Plaintiffs initially opposed. However, in the joint final pretrial order the parties indicated that Plaintiffs have withdrawn their wage-loss claim. Accordingly, Defendant's third motion in limine [Dkt. # 21] will be denied as moot.

**V**

Accordingly, it is **ORDERED** that Defendant's motions in limine [Dkt. # 19, 20, 21] are **GRANTED IN PART AND DENIED IN PART**. Defendant's motion in limine regarding plaintiffs' expert [Dkt. # 19] is **GRANTED IN PART AND DENIED IN PART**. Defendant's motion in limine regarding medical expenses [Dkt. # 20] is **DENIED**. Defendant's motion in limine regarding wage loss damages [Dkt. # 21] is **DENIED AS MOOT**.

It is further **ORDERED** that Defendant's supplemental brief and the deposition of Dr. deBari [Dkt. # 35] are **STRICKEN**. The Clerk is directed to remove the images from the docket.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: September 9, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 9, 2010.

s/Tracy A. Jacobs
TRACY A. JACOBS